UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA LAYNE,

    Petitioner,

v.

ANTHONY STEWART,

    Respondent,

_____/

Civil No. 2:16-CV-11194
HONORABLE NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Sandra Layne, ("Petitioner"), confined at the Huron Women's Correctional Facility in Ypsilanti, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, through counsel Christopher J. McGrath, in which she challenges her conviction for second-degree murder, M.C.L.A. 750.317; and possession of a firearm in the commission of a felony (felony-firearm), M.C.L.A. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is **DENIED**.

**I. Background**

Petitioner was charged with first-degree murder and felony-firearm. Petitioner was convicted of the lesser included offense of second-degree murder and guilty of the felony-firearm charge following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Defendant shot her grandson, Jonathon Hoffman, to death. Jonathon lived

with defendant and her husband. In March 2012, Jonathan was charged with marijuana possession and sentenced to probation that included drug testing. In April 2012, defendant purchased a handgun, a speed loader, and a box of ammunition. She took two lessons related to gun use, which included firing the gun at a gun range. Her husband did not know about the gun purchase or the lessons. On the morning of May 18, 2012, defendant took Jonathon to his scheduled drug test. Because he tested positive for "spice," also known as "K2," he had to return later in the day and he was angry. He and defendant argued. Defendant took Jonathon to his afternoon drug test and, after his return to the vehicle, they argued. When defendant and Jonathon arrived home at some time after 4:30 p.m., defendant asked her husband to take the dog for a walk. While defendant's husband was out walking the dog, at some time before 5:27 p.m., the shooting occurred. Defendant fired numerous gunshots, in several areas of the house. Jonathon was shot six times and died. Toxicology tests revealed no drugs in his blood, but a synthetic drug metabolite in his urine, i.e., K2. The medical examiner testified that drugs found in urine have exited a person's system and do not affect the person. Defendant was arrested and taken to a hospital. No injuries were identified. At trial, defendant asserted that she shot Jonathon in self-defense.

*People v. Layne*, No. 316059, 2014 WL 5164652, at *1 (Mich. Ct. App. Oct. 14, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 1028 (2015).

Petitioner seeks habeas relief on the following grounds:

I. The trial court denied petitioner her right to present a defense when it precluded her from offering evidence about the decedent's state of mind and intent[.]

II. The trial court violated the Eighth Amendment when it sentenced petitioner to 20-40 years imprisonment with a consecutive mandatory two-year term[.]

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
        (1)    resulted in a decision that was contrary to, or involved

> an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected petitioner's claims under a

plain error standard because petitioner failed to preserve the issues at the trial court level.

In *Fleming v. Metrish,* 556 F.3d 520, 532 (6th Cir. 2009), a panel of the Sixth Circuit held that the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. In a subsequent decision, the Sixth Circuit held that that plain-error review is not equivalent to adjudication on the merits, so as to trigger AEDPA deference. *See Frazier v. Jenkins*, 770 F. 3d 485, 496 n. 5 (6th Cir. 2014). The Sixth Circuit noted that "the approaches of *Fleming* and *Frazier* are in direct conflict." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015). When confronted by conflicting holdings of the Sixth Circuit, this Court must follow the earlier panel's holding until it is overruled by the United States Supreme Court or by the Sixth Circuit sitting *en banc*. See *Darrah v. City of Oak Park,* 255 F.3d 301, 310 (6th Cir. 2001). This Court believes that the AEDPA's deferential standard of review applies to these claims, even though they were reviewed only for plain error.

### III. Discussion

**A. Claim # 1. The right to present a defense claim.**

Petitioner contends that her right to present a defense was violated when the judge refused to allow her to present evidence that she claims would have bolstered her self-defense claim. Petitioner was precluded from testifying about statements her grandson made during both car rides home following the drug tests. Petitioner claims that these statements would have shown her grandson's state of mind and why she believed she needed to use deadly force to defend herself from him. Petitioner also claims that she should have been permitted to introduce statements that her grandson made to his probation officer over two weeks prior to the shooting, which purportedly questioned the

4

probation officer's authority and showed disrespect for authority figures in general. Petitioner argues that all of this evidence would have shown that she had reason to believe that she was in danger of being killed or seriously injured by her grandson and thus was justified in shooting him in self-defense.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (citing *Van Arsdall,* 475 U.S. at 679). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner is not entitled to relief on her claim.

First, petitioner never made an offer of proof at the trial court level to demonstrate the admissibility or relevance of these statements. (Tr. 3/13/13, pp. 40-43, 90-92). The Michigan Court of Appeals relied on this failure in part to reject petitioner's claim. *People v. Layne*, 2014 WL5164652, at * 2. Petitioner has also failed to proffer the contents of these statements to this Court. A habeas petitioner is not entitled to habeas relief on a right to present a defense claim that is merely speculative. *See e.g. Berry v. Palmer*, 518 F. App'x. 336, 342 (6th Cir. 2013). Without knowing the precise nature of the excluded testimony, this Court is unable to establish whether the statements would have been helpful to petitioner.

Secondly, petitioner was able to present extensive evidence of the victim's history of aggression and illegal drug use in support of her self-defense claim. The probation officer was permitted to testify that Mr. Hoffman tested positive for K2 or "spice," which was a violation of his probation. (Tr. 3/13/13, pp. 44-46). Part of petitioner's self-defense claim was that her grandson was under the influence of the K2 at the time of the shooting and was upset that he failed the drug test and intended to leave Michigan as a result. Petitioner testified that her grandson was agitated after the second drug test, had told her

6

he was not going to jail, and that he intended to leave the State of Michigan. Petitioner testified that her grandson used obscene language, kicked her car's dashboard, attempted to grab the steering wheel while she was driving and tried to take away the car keys after she pulled over. Petitioner testified that upon their arrival home, Mr. Hoffman insisted on leaving home, demanded cash and an automobile from petitioner, and yelled at her. (*Id.*, p. 88-89, 95-99, 103; Tr. 3/14/13, p. 80). Petitioner testified that she went to retrieve her gun and brought it back to Mr. Hoffman's room. Petitioner testified that when she confronted Mr. Hoffman, he kicked her and hit her in the head, which put her in fear for her life. Petitioner testified that a struggle ensued, during which she attempted to run away. Petitioner claimed that she continued shooting to get away from Mr. Hoffman and to stop him. (*Id.*, pp. 102-07). Petitioner testified about her grandson's prior behavioral and drug problems, including an incident where he was taken to Botsford Hospital after ingesting marijuana and psychedelic mushrooms. When petitioner and her husband arrived at the hospital, Mr. Hoffman was tied to a bed. Petitioner testified that she told her husband Fred Layne that she had become afraid of their grandson. (*Id.*, pp. 133-37). There was evidence that Mr. Hoffman had crashed a computer monitor to the floor during one argument with petitioner and had on other occasions kicked in closet doors and broken items in his room. (*Id.*, pp. 68, 100-01, 142). There was also evidence presented that police had previously responded to a domestic dispute at petitioner's house, during which time Mr. Hoffman was agitated and made derogatory remarks about his mother and the police. (*Id.,* pp. 21-30).

     Mr. Hoffman's statements in the car to petitioner and his prior statements to his probation officer would have, at best, been cumulative of ample evidence that had been

7

offered in support of petitioner's self-defense claim. Because Mr. Harrison's statements would have been cumulative of other evidence that petitioner had acted in self-defense, the Michigan Court of Appeals' determination that the exclusion of this evidence did not violate petitioner's right to present a defense was not an unreasonable application of clearly established law, so as to entitle petitioner to relief. *See Blanton v. Elo*, 186 F.3d 712, 715-16 (6th Cir. 1999). The judge's rulings were not so egregious that they effectively denied petitioner a fair trial, in light of the fact that petitioner was not completely barred from bringing in evidence about her grandson's illegal drug use, his erratic and aggressive behavior, and his lack of respect for petitioner and her husband. *See Fleming v. Metrish*, 556 F. 3d at 535-36. With the quantum of evidence concerning Mr. Hoffman's aggressive behavior and illegal drug consumption in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)).

Finally, assuming that the judge erred in excluding Mr. Hoffman's statements to his probation officer and to petitioner, any error would have been harmless. In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

The Michigan Court of Appeals concluded that the exclusion of statements that Mr. Hoffman made to petitioner did not affect the outcome of the trial, because of the

weakness of petitioner's self-defense claim:

> On the record before us, defendant fails to establish that, even if the evidence was improperly excluded, the error affected the outcome of the trial. That is, contrary to her claim, any statements Jonathon purportedly made in the car on the way home from the drug testing appointments would not likely have led the jury to believe that Jonathon was the initial aggressor before defendant shot him multiple times. Defendant testified that after they returned home from the second drug testing, she and defendant were arguing upstairs in his bedroom. Jonathon wanted to leave Michigan because of his positive drug test and purportedly said: "I am getting out of here and I'm taking your car." Defendant also testified that he said he knew where she kept money in the house. After Jonathon made these statements, defendant testified, she went downstairs to her bedroom and retrieved her loaded handgun because: "I wanted him to hear me. I wanted him to pay attention to me. That I would not give him a car. I would not let him take the car. I would not let him take the money. He had to listen." She then climbed the 13 stair steps back up to Jonathon's bedroom with the loaded gun in her hand and found Jonathon in the bathroom. She walked toward him in the bathroom; the gun was not concealed. They were very close to each other. Jonathon kicked her and she began shooting. On this record, any statements Jonathon made in the car after the drug testing, both early in the day and in the afternoon, would not tend to establish defendant's claim of lawful self-defense. Accordingly, this claim is without merit.
>
> *People v. Layne*, 2014 WL 5164652, at * 2.

The Michigan Court of Appeals concluded that the exclusion of statements made by Mr. Hoffman to his probation officer two weeks prior to the shooting likewise did not affect the outcome of the trial:

> Further, in light of the record evidence, any statements Jonathon made in the car after the drug testing or to his probation officer over two weeks before he was shot would not tend to support defendant's claim of lawful self-defense.
>
> *Id.,* at * 3.

To be lawful self-defense under Michigan law, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action

9

taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

There was little evidence to support petitioner's self-defense claim. Petitioner herself testified that she and her grandson returned home from the second drug test at about 4:30 p.m. Petitioner asked her husband to take the dog for a walk, which was inconsistent with her fear of imminent danger from Mr. Hoffman and more suggestive of premeditation. Petitioner and Mr. Hoffman got into an argument. Mr. Hoffman told her that he wanted to leave Michigan and threatened to take her car and some money. Petitioner did not testify that her grandson physically assaulted her or threatened her at the time. After Mr. Hoffman made these statements, petitioner went downstairs to her bedroom and grabbed her loaded handgun because: "I wanted him to hear me. I wanted him to pay attention to me. That I would not give him a car. I would not let him take the car. I would not let him take the money. He had to listen." Petitioner did not testify that she retrieved her firearm because she was afraid. Petitioner went back upstairs to her

grandson's bedroom with the loaded gun in her hand, walked into the bathroom and confronted her grandson. Petitioner's actions would suggest that she was the initial aggressor. Petitioner's grandson kicked petitioner and she began shooting. Petitioner shot her grandson six times, including once in the back. (Tr. 3/11/13, pp. 24-37). There was evidence that petitioner shot the victim at several different places in the house. There was also evidence that petitioner continued shooting the victim even after he got on the phone and called 911 for help. (Tr. 3/12/13, pp. 233-36). Although petitioner testified that Mr. Hoffman kicked or hit her in the head, the police did not notice any visible injuries when petitioner was arrested and she denied having any injuries at the hospital. When a nurse asked petitioner if her grandson hurt her, she said, "No, he's a good boy." (Tr. 3/5/13, pp. 163-68; Tr. 3/14/13, p. 104).

In light of the foregoing evidence, a reasonable jury could have concluded that petitioner's actions were inconsistent with acting in self-defense. Accordingly, the exclusion of evidence of Mr. Hoffman's statements to petitioner in the car and his prior statements to his probation officer did not have a substantial or injurious effect on petitioner's case so as to entitle him to habeas relief. *See Fleming v. Metrish*, 556 F.3d at 537. Petitioner is not entitled to relief on her first claim.

### B. Claim # 2. The sentencing claim.

Petitioner next claims that her sentence of twenty to forty years in prison on the second-degree murder conviction and the consecutive two year sentence for the felony-firearm conviction constitutes cruel and unusual punishment because it exceeds her likely life expectancy.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eight Amendment grounds faces a formidable challenge. He or she may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade,* 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Id.* The Supreme Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.*

In *Lockyer,* the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-year-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $ 150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Supreme Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm,* 463 US. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin,* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel,* where

12

the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer,* 538 U.S. at 72-77.

A plurality of the Supreme Court held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *Harmelin,* 501 U.S. at 965. As the Supreme Court observed in *Lockyer,* it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell,* 268 F. 3d 417, 453 (6th Cir. 2001)(citing *Coker v. Georgia,* 433 U.S. 584, 592 (1977)); *United States v. Hopper,* 941 F. 2d 419, 422 (6th Cir. 1991)).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272. Rummel was convicted of obtaining $ 120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $ 80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $ 28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life

13

sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin,* the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $ 100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutionally sufficient a sentence of twenty-five years to life imposed upon a fifth felony conviction. *Ewing v. California,* 538 U.S. 11, 24-31 (2003).

In the present case, petitioner's sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F. 3d 60, 62 (6th Cir. 1995)(citation omitted)(quoted with approval in *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin,* 213 F. 3d at 301 (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)).

In light of "the vagueness of the gross-disproportionality principle and the admonition that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case," this Court concludes that the state courts did not unreasonably apply clearly

14

established law in rejecting petitioner's proportionality claim. See *Smith v. Howerton*, 509 F. App'x. 476, 484 (6th Cir. 2012)(internal quotations omitted).

Petitioner's sentence of 20 to 40 years in prison was within the statutory limits of the offense of second-degree murder. Petitioner's minimum sentence of twenty years was within the sentencing guidelines range of 144 to 240 months for the second-degree murder conviction. [1] In Michigan, sentences within a correctly scored guidelines range are presumptively proportionate. See *Hastings v. Yukins,* 194 F. Supp. 2d 659, 673-674 (E.D. Mich. 2002)(citing to *People v. Bailey*, 218 Mich. App. 645, 647; 554 N. W. 2d 391 (1996)). This Court concludes that petitioner's sentence of 20 to 40 years in prison for second-degree murder and an additional 2 years for the felony-firearm conviction was not extreme or grossly disproportionate to the offense or to the offender, so as to entitle her to habeas relief. See *Benton v. Booker,* 403 F. App'x. 984, 986 (6th Cir. 2010)(imposition of prison term of 25–50 years for petitioner's second-degree murder conviction was not unconstitutionally disproportionate to the offense or the offender, particularly where sentence was less than the statutory maximum for the offense).

In addition, the mere fact that the sentence may exceed petitioner's life expectancy does not alter this Court's analysis. In rejecting a similar claim in a direct appeal from a federal criminal conviction, the Sixth Circuit has noted that "[T]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual

---

[1] The sentence for felony-firearm in Michigan is a mandatory two year prison sentence that must be served consecutively to any underlying felony. See M.C.L.A. 750.227b. Hence, the crime of felony-firearm is not covered by the Michigan Sentencing Guidelines. *People v. Johnigan,* 265 Mich. App. 463, 472; 696 N.W. 2d 724 (2005).

punishment." *United States v. Beverly,* 369 F. 3d 516, 537 (6th Cir. 2004)(citing *Harmelin,* 501 U.S. at 996).

Finally, petitioner's claim that the trial court failed to consider her rehabilitative potential in fashioning her sentence is non-cognizable on federal habeas review. *See Grays v. Lafler,* 618 F. Supp. 2d 736, 749 (W.D. Mich. 2008). "There is no constitutional principle that prefers rehabilitation over deterrence and retribution as a goal of sentencing." *Fielding v. LeFevre*, 548 F. 2d 1102, 1108 (2nd Cir. 1977). Accordingly, petitioner is not entitled to habeas relief on her second claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus with prejudice. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because she failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

        s/ Nancy G. Edmunds
        **HON. NANCY G. EDMUNDS**
        UNITED STATES DISTRICT JUDGE

Dated: 3/9/17

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this Order was served upon parties/counsel of record on this 9th day of March, 2017 by regular mail and/or by CM/ECF.

        s/ Carol J. Bethel
        Case Manager